UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BETH JEANRILL L. DINSAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-00907-TWP-DML |
| | ) | |
| RN STAFF INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Cross-Motions for Summary Judgment filed pursuant to

Federal Rule of Civil Procedure 56 by Plaintiff Beth Jeanrill L. Dinsay ("Dinsay") and Defendant

RN Staff Inc. ("RN Staff") (Filing No. 63; Filing No. 70; Filing No. 71).  Dinsay initiated this

lawsuit against RN Staff for violation of the Trafficking Victims Protection Act after she was paid

less than the prevailing wage rate for her work as a physical therapist.  After RN Staff moved for

summary judgment on Dinsay's two claims, Dinsay responded and filed a cross-motion.  For the

following reasons, both Motions are **denied**.

## I.   BACKGROUND

Dinsay, a citizen of the Philippines, is a physical therapist by training and education.  She

graduated with a Bachelor's degree in physical therapy from an educational institution in the

Philippines.  Dinsay was sponsored by Grandison Management, Inc. to work as a nonimmigrant

H-1B physical therapist in the United States.  After approval of the H-1B petition and the issuance

of her H-1B nonimmigrant visa, Dinsay lawfully entered the United States on January 23, 2013,

to work as a physical therapist.  She lives in New York where she is licensed to practice physical

therapy.  Dinsay's H-1B status with her original employer was extended by the United States Citizenship and Immigration Services ("USCIS") until August 9, 2016 (Filing No. 72-1 at 2–3).

RN Staff is an Indiana corporation that maintains offices in Indianapolis, Indiana and does business as Rehability Care.  It is engaged in the business of hiring physical therapists and then providing those physical therapists to health care facilities and organizations throughout the country.  *Id.* at 2; Filing No. 64-1 at 1.  On or about November 4, 2015, RN Staff recruited Dinsay by communicating with her in New York and offering her green card sponsorship and employment. In its efforts to recruit Dinsay, RN Staff told her that it would immediately file her Form I-140 immigrant petition rather than sponsoring her as a nonimmigrant H-1B employee (Filing No. 72-1 at 3).  RN Staff promised Dinsay that it would sponsor her as a physical therapist under the EB-2 immigrant worker category, which requires the worker to have at least a Master's degree or five years of relevant experience as a physical therapist.  At that time, Dinsay had a Bachelor's degree in physical therapy and more than five years of relevant experience.  *Id.* at 4; Filing No. 72-6 at 2, ¶¶ 3–4; Filing No. 72-7 at 1, ¶¶ 3–4.

On November 9, 2015, Dinsay and RN Staff executed an employment agreement.  RN Staff agreed to sponsor Dinsay for an employment-based visa, and it would complete and submit the USCIS paperwork on behalf of Dinsay.  RN Staff agreed to employ Dinsay for 4,160 hours with the expectation of providing her with thirty-five to forty hours of work each week.  The employment agreement specified that Dinsay would be compensated $1,100.00 net per week based on a forty-hour work week as well as other employment benefits (Filing No. 64-1 at 1–5).

In January 2016, RN Staff filed a Form I-140 immigrant petition on behalf of Dinsay whereby the position offered was that of an EB-2 category.  In filing the EB-2 Form I-140 petition on behalf of Dinsay, RN Staff represented to USCIS that it would pay Dinsay at least the prevailing

wage rate for the offered position ([Filing No. 72-6 at 2](#)–3, ¶¶ 7–8; [Filing No. 72-7 at 1](#), ¶¶ 7–8). Before RN Staff filed the EB-2 Form I-140 immigrant petition on behalf of Dinsay, RN Staff researched how much the prevailing wage rate was for the EB-2 position offered to Dinsay at her anticipated worksite.[1] RN Staff assisted Dinsay in the simultaneous filing of Dinsay's Form I-485 adjustment application and Form I-765 employment authorization application ([Filing No. 72-6 at 3](#), ¶¶ 12–13; [Filing No. 72-7 at 2](#), ¶¶ 12–13).

Dinsay began working for RN Staff on March 25, 2016.  RN Staff initially assigned Dinsay to work at an out-patient clinic in Brooklyn, New York.  In November 2016, RN Staff reassigned her to work as a physical therapist in Freeport, New York.  Also in November 2016, USCIS issued a request for evidence ("RFE") regarding the EB-2 Form I-140 immigrant petition filed by RN Staff on behalf of Dinsay ([Filing No. 72-6 at 3](#)–4, ¶¶ 14–15, 20–21; [Filing No. 72-7 at 2](#), ¶¶ 14–15, 20–21).

RN Staff clearly made known to Dinsay that it would not transfer her H-1B status, but, instead, it would immediately file for Dinsay's green card sponsorship. Around November 2017, RN Staff received a second RFE from USCIS concerning its Form I-140 immigrant petition on behalf of Dinsay. After it received the second RFE, RN Staff informed Dinsay about the RFE ([Filing No. 72-6 at 6](#), ¶¶ 31, 36, 37; [Filing No. 72-7 at 3](#), ¶¶ 31, 36, 37).

When Dinsay began receiving her paychecks, her paycheck statements indicated that she was being paid only $18.00 per hour for her "regular pay," and a sizeable portion of her paycheck was paid to her through "non-taxable pay." ([Filing No. 72-3](#); [Filing No. 72-6 at 5](#), ¶¶ 23, 25; [Filing No. 72-7 at 2](#), ¶¶ 23, 25.) The W-2 forms issued by RN Staff to Dinsay indicate that Dinsay was

---

[1] The prevailing wage rate for the physical therapist position offered to Dinsay was $78,874.00 per year. RN Staff represented on the immigration paperwork that Dinsay's offered wage was $78,874.00 per year, her offered wage equaled or exceeded the prevailing wage, and RN Staff would pay at least the prevailing wage ([Filing No. 72-4 at 11](#), 15, 22, 34, 36).

paid $23,627.70 in 2016 and $45,083.16 in 2017 (Filing No. 72-10 at 1–2). However, Dinsay's paycheck statements indicate that she was paid approximately $43,281.36 in 2016[2] and $84,174.20 in 2017, including overtime pay (Filing No. 72-3 at 1, 6).

Dinsay discovered that she was being paid $18.00 per hour for her "regular pay," and after doing some research, learned that the prevailing wage rate was $37.92 per hour. It occurred to Dinsay that if RN Staff was not declaring her correct wages, the Form I-140 immigrant petition filed on her behalf could be denied, which would then make her presence in the United States unlawful. In March or April 2017, Dinsay called RN Staff and complained about being paid only $18.00 per hour with an additional, flexible "non-taxable pay," which she believed was neither correct nor legal. She demanded that she be paid proper wages as a licensed physical therapist (Filing No. 72-1 at 6, 9, 12, ¶¶ 38, 57, 59, 76).

Dinsay's telephone call was received by Ramon Villegas ("Villegas"), RN Staff's corporate representative with whom Dinsay previously had interacted regarding her recruitment, sponsorship, and wages. Villegas was upset with Dinsay for complaining about her wages, and he yelled at her about her pay. Villegas explained that she was being paid the contractually agreed upon wages for her weekly net income. Dinsay was scared by Villegas's angry, yelling response. Villegas told her that he did not like "problem employees." *Id.* at 12–13, ¶¶ 77–83. He informed Dinsay, that "If you continue to complain about your wages, you can forget about your immigrant petition. I can have it withdrawn or we can decide not to comply with any RFEs." *Id.* at 13, ¶ 83. When Dinsay asked him to not withdraw her sponsorship, Villegas responded, "[t]hen, you better be a good employee, and just work your hours." *Id.* at 13, ¶¶ 84–85. Dinsay was afraid that RN Staff would carry out its threat and withdraw her Form I-140 immigrant petition sponsorship and

---

[2] Dinsay had not worked a full calendar year for RN Staff in 2016 because she started work on March 25, 2016.

that she would lose everything by becoming unlawfully present in the country, so she remained silent about the wage issue and continued working for RN Staff. *Id.* at 14–15, ¶¶ 90–91, 95.

RN Staff and Villegas deny that this conversation took place and deny that Dinsay was ever threatened. Villegas contends that he never yelled or shouted at Dinsay, he never threatened her, and he denies that he ever threatened Dinsay's immigration status (Filing No. 79-1 at 1–2, 5). RN Staff also asserts that, contrary to Dinsay's assertion, Dinsay was paid the proper prevailing wage for her work. *Id.* at 2.

Around April or May 2018, Dinsay completed working the contractually agreed upon 4,160 hours for RN Staff. At that time, USCIS had not yet adjudicated the Form I-140 immigrant petition filed by RN Staff on behalf of Dinsay. However, she wanted to leave RN Staff and work for a company that would pay correct wages and properly report wages. Dinsay asked the medical facility where RN Staff had assigned her if it would hire her as a direct employee. That facility agreed to hire Dinsay as a direct employee (Filing No. 72-1 at 16–17, ¶¶ 106–10).

On April 3, 2018, Dinsay sent RN Staff a resignation letter with an effective resignation date thirty days after the letter. RN Staff waived the non-compete and non-solicitation covenants of its employment agreement so that Dinsay could work for her chosen employer after her resignation. Over the next several months, RN Staff attempted to contact Dinsay several times to discuss her plans and her employer's efforts to effectuate immigration filings on her behalf, but Dinsay did not respond. In September 2018, approximately four months after Dinsay's resignation, RN Staff withdrew its Form I-140 immigrant petition (Filing No. 79-1 at 4–5; Filing No. 77-1 at 3).

On October 4, 2018, Dinsay initiated this lawsuit to assert two claims against RN Staff—violation of the Trafficking Victims Protection Act, 18 U.S.C. § 1589 ("TVPA"), and violation of

26 U.S.C. § 7434 (Filing No. 1 at 18–19).  After more than two years of litigation activity, RN

Staff filed its Motion for Summary Judgment on Dinsay's two claims, and Dinsay filed her Cross-

Motion for Summary Judgment (Filing No. 63; Filing No. 70; Filing No. 71).[3]

## II.    LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in

order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary

judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v.*

*Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary

judgment, the court reviews "the record in the light most favorable to the non-moving party and

draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th

Cir. 2009) (citation omitted).  "However, inferences that are supported by only speculation or

conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624,

627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the

burden of proof on a particular issue may not rest on its pleadings, but must affirmatively

demonstrate, by specific factual allegations, that there is a genuine issue of material fact that

requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet

this burden with conclusory statements or speculation but only with appropriate citations to

---

[3] Dinsay raised various objections regarding technical defects in some of the evidence designated by RN Staff.  RN Staff subsequently corrected those technical defects, and the Court has looked to the corrected designated evidence in ruling on these Motions for Summary Judgment.  Dinsay also raised the issue of the timeliness of RN Staff's response/reply brief and a defect in a section heading in RN Staff's opening brief.  Because the response/reply deadline fell on a weekend, and more importantly, because Dinsay was able to fully and fairly respond to RN Staff's briefing, the Court will accept RN Staff's summary judgment briefing.  However, RN Staff is admonished to carefully follow all procedural rules and deadlines.

relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

The Court notes that a "document filed *pro se* is to be liberally construed, and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and quotation marks omitted).

> However, it is also well established that pro se litigants are not excused from compliance with procedural rules. [T]he Supreme Court has never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel[.] Further, as the Supreme Court

has noted, in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

*Loubser v. United States*, 606 F. Supp. 2d 897, 909 (N.D. Ind. 2009) (citations and quotation marks omitted).

### III.   DISCUSSION

In its Motion for Summary Judgment, RN Staff argues that it is entitled to judgment on Dinsay's two claims because this Court already decided similar issues based on similar facts in the case of *Panwar v. Access Therapies, Inc.*, 2015 U.S. Dist. LEXIS 38117 (S.D. Ind. Mar. 25, 2015). In her Cross-Motion, Dinsay argues that *Panwar* is distinguishable and does not control the outcome here, and the evidence supports her TVPA claim.

Regarding her second claim, Dinsay explains,

While I still believe that the Defendant flagrantly violated 26 U.S.C. § 7434 in that it knowingly issued me false W-2s that did not correctly reflect the wages that should have been paid me, I must seek the Court's indulgence to allow me to drop the second cause of action, as I intend to exert all my resources to proving my first cause of action, that is, the forced labor claim.

(Filing No. 71 at 7.)  Because Dinsay has decided to voluntarily "drop the second cause of action," the Court dismisses her claim against RN Staff for violation of 26 U.S.C. § 7434 and will not further discuss this claim.

Concerning Dinsay's TVPA claim, Congress has enacted statutes to protect against "peonage, slavery, and trafficking in persons," including "forced labor."  *See* 18 U.S.C. § 1589. The TVPA provides,

Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;
(3) by means of the abuse or threatened abuse of law or legal process; or
(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

shall be punished as provided under subsection (d).

18 U.S.C. § 1589(a). "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator." 18 U.S.C. § 1595(a).

Among other things, the parties dispute whether the evidence and case law support Dinsay's claim that RN Staff obtained the labor or services of Dinsay by means of serious harm or threats of serious harm. RN Staff focuses its argument on the Court's prior decision in *Panwar v. Access Therapies*. RN Staff argues that the Court determined in *Panwar* that the threat of deportation is not a threat of serious harm under the TVPA, and thus, Dinsay's claim fails as a matter of law and fact. *See Panwar*, 2015 U.S. Dist. LEXIS 38117, at *13.

Dinsay argues that the factual and legal distinctions between H-1B nonimmigrant status (in the *Panwar* case) and EB-2 immigrant status (in this case) compel a different result in this case, and, additionally, the dissimilar facts in this case also compel a different result. Dinsay further asserts,

Given the context when Defendant's Villegas uttered his threat, that is, during his conversation with Plaintiff to address Plaintiff's complaints about not getting paid properly her wages, Defendant's Villegas's threat was not simply a factual statement of what would happen if Defendant withdrew its immigration sponsorship, but it was clearly a subtle psychological method of coercion to retain Plaintiff's labor or services.

(Filing No. 78 at 8).

The Court first notes that the TVPA explains,

The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious,

under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2).

The statutory definition within the TVPA recognizes nonphysical harm as one possible "serious harm" that can give rise to liability.  The Court also notes that this definition compels a factual determination, and based upon the central issue of whether Villegas threatened Dinsay regarding the immigrant petition—and the parties dispute the facts concerning that issue—the Court concludes that summary judgment is not appropriate.

The facts presented by Dinsay suggest that RN Staff obtained the labor of Dinsay by means of threats of serious harm when considering the full context of Villegas' threats to Dinsay about her immigrant petition and RN Staff's compliance with the RFEs.  When Dinsay asked him to not withdraw her sponsorship, Villegas responded that Dinsay better be a good employee and just work her hours.  Within context, Villegas' threat could be viewed as a subtle psychological method of coercion to retain Dinsay's labor rather than simply a factual statement of what would happen if RN Staff withdrew its immigration sponsorship. On the other hand, RN Staff has designated evidence that the conversation never happened, and Dinsay was not threatened regarding her immigrant petition.  This factual dispute must be decided by a trier of fact, not by the Court on summary judgment.

As a final note, the Court points out that the factual and legal distinctions between H-1B nonimmigrant status and EB-2 immigrant status justify the Court's departure from the nonbinding *Panwar* decision in denying summary judgment in this case.

## IV.   **CONCLUSION**

For the reasons explained above, the Court **DENIES** the parties' Cross-Motions for Summary Judgment (Filing No. 63; Filing No. 70; Filing No. 71).  Dinsay voluntarily dismissed her claim against RN Staff for violation of 26 U.S.C. § 7434; therefore, that claim is **dismissed**. Dinsay's claim for violation of the Trafficking Victims Protection Act, 18 U.S.C. § 1589 remains pending for settlement or trial.

**SO ORDERED.**

Date:  5/21/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Beth Jeanrill L. Dinsay
85 North Long Beach Avenue, Apt. 4A
Freeport, New York  11520

Bryce H. Bennett, Jr.
RILEY BENNETT EGLOFF LLP
bbennett@rbelaw.com

Patrick Stephen McCarney
RILEY BENNETT EGLOFF LLP
pmccarney@rbelaw.com

G. John Cento
CENTO LAW
cento@centolaw.com

Christopher Terrell Lane
LANE LAW OFFICE
chrislane23@msn.com

Glenn A. Obedin
NAIBURG, OBEDIN & WEISSMAN, LLP
The Courthouse Corporate Center, Suite 4200
320 Carleton Avenue
Central Islip, New York  11722